IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIXTO SALCIDO, | No. C 04-4232 MMC (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO AMEND CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DAVID ZAREK, M.D.; CHARLES DUDLEY LEE, M.D.; ROBERT BOWMAN, M.D.; G. LAUBER, | |
| Defendants. | **(Docket Nos. 30, 41, 50, 51)** |

Plaintiff Sixto Salcido, an inmate at Salinas Valley State Prison ("SVSP") proceeding pro se, filed the above-entitled civil rights action under 42 U.S.C. § 1983, alleging he has received inadequate medical care. On October 19, 2004, after reviewing the complaint, the Court found plaintiff had stated cognizable claims against defendants Dr. David Zarek ("Dr. Zarek"), Dr. Charles Dudley Lee ("Dr. Lee"), Dr. Robert Bowman ("Dr. Bowman"), and G. Lauber ("Lauber"). Drs. Lee and Bowman, along with Lauber, filed a motion for summary judgment. Dr. Zarek, who was served after the other defendants, subsequently filed a separate motion for summary judgment. Plaintiff has opposed both motions and has filed a cross-motion for summary judgment, which he subsequently moved to amend. Defendants have filed a joint reply to plaintiff's opposition, in which, in addition, they have included their opposition to plaintiff's motion for summary judgment.

## BACKGROUND

The following facts are undisputed or are read in the light most favorable to plaintiff.[1] In 1996, plaintiff was involved in a gun battle with the police, during which several bullet fragments lodged in his neck area. In March 2002, plaintiff was transferred to SVSP. Dr. Zarek performed minor surgery on plaintiff on April 24, 2002 at SVSP, removing some of the bullet fragments. Additional bullet fragments were not removed because they were embedded in the cervical spine area and Dr. Zarek could not see or feel them. Plaintiff requested pain medication after the surgery, and again at his May 1, 2002 follow-up appointment with Dr. Zarek. Dr. Zarek ordered the pain medication for plaintiff, but plaintiff did not actually receive it. Plaintiff was next seen by a doctor on November 20, 2002, at which time he was prescribed pain medication. Plaintiff thereafter continued to be examined and prescribed pain medication on a regular basis.[2] A July 2003 x-ray revealed that scattered bullet fragments remained in plaintiff's neck area, near the cervical spine.

On December 16, 2003, plaintiff filed an administrative grievance, complaining that he was not receiving adequate care for the remaining fragments in his neck, and requesting additional surgery to remove them. The appeal was granted in part, and plaintiff was examined by Dr. Zarek on December 18, 2003, at which time plaintiff requested a second surgery. Dr. Zarek ordered a neurological consultation, prescribed additional pain medication, a cervical collar, x-rays and an MRI exam. The x-rays were performed on December 22, 2003, and the MRI was performed on January 22, 2004. The x-rays showed bullet fragments remained, and the MRI results were normal. On January 16, 2004, Dr. Zarek re-ordered a cervical collar. It was eventually issued by SVSP officials on March 3,

---

[1] These facts are derived from the exhibits submitted by the parties, including plaintiff's medical records, plaintiff's administrative appeals, plaintiff's declaration in support of his opposition and cross-motion, and defendants' answers to interrogatories.

[2] The medical records submitted in connection with the instant motion run through March 2005. Between November 2002 and March 2005, plaintiff was prescribed a variety of pain medications, for periods ranging from 30 to 100 days, in November and December 2002, as well as in January, May, July, October and December 2003, continuing in January, March, June, August, October and December 2004, and thereafter in February and March 2005.

2

2004, but not actually given to plaintiff at that time because the form "chrono" authorizing plaintiff to possess the collar was not issued.

In the meantime, on January 16, 2004, plaintiff submitted his administrative appeal to the first formal level and, on January 29, 2004, Lauber interviewed plaintiff in connection with that appeal. Lauber agreed to postpone the interview until a Spanish-language interpreter was available. A second interview was not conducted, however. Dr. Bowman reviewed the appeal, and, on March 3, 2004, directed that plaintiff be seen at the clinic in order to address his medical needs. The following day, plaintiff was examined by a doctor who ordered that plaintiff be considered for physical therapy; he also prescribed new pain medication and scheduled a follow-up visit at the prison clinic for two weeks thereafter.

Plaintiff proceeded with his administrative appeal, which, at this point, was to the second formal level. On April 30, 2004, Drs. Bowman and Lee, after reviewing the appeal, ordered that plaintiff be seen in the clinic within a month. Plaintiff was seen on June 3, 2004, by a doctor who prescribed more pain medication and ordered a special pillow for plaintiff to use while sleeping.[3] The pillow was not issued to plaintiff at that time, however, because it was out of stock.

Thereafter, plaintiff proceeded to the next level of appeal, the Director's level. On July 28, 2004, the Chief of Inmate Appeals ordered that plaintiff's use of a cervical collar and special pillow be authorized, as well as an MRI of his neck, provision of any necessary physical therapy, and a neurological consultation. Plaintiff thereafter received a cervical collar, special pillow, physical therapy and more pain medication.[4] The neurosurgical consultation was approved on August 25, 2004. On September 28, 2004, plaintiff was examined by Dr. Muizelaar, Chair of the Division of Neurosurgery at the University of California at Davis. Dr. Muizelaar did not recommend further surgery, stating, "I do not think there is much that can be done for this patient." Dr. Muizelaar recommended stronger

---

[3] The parties, in their briefs and exhibits, refer to this pillow as a "cervical" pillow.

[4] The parties do not indicate the precise date on which plaintiff received these items and treatment.

3

1 pain medication and use of a special pillow.  Plaintiff continues to receive pain medication in
2 addition to physical therapy, a cervical collar, and a special pillow.

## DISCUSSION

A. <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>id.</u>

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>see also</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  See <u>Celotex</u>, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party; if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  See <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir.

4

1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B. Legal Claims

Plaintiff makes a number of claims regarding his medical care; specifically, plaintiff claims defendants are liable because: (1) Dr. Zarek failed to remove all of the bullet fragments from his neck while performing surgery in April 2002; (2) plaintiff requested pain medication from Dr. Zarek following his surgery but received no medication until November 2002; (3) there were substantial delays in providing plaintiff with the cervical collar and special pillow after those items were ordered by his doctors; (4) a follow-up surgery on his neck has not been approved or performed.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle v. Gamble, 429 U.S. at 104). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic and substantial pain. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard to that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060.

        1.    Surgery

As noted, plaintiff complains that Dr. Zarek performed surgery inadequately in April 2002 because he did not remove all of the bullet fragments from plaintiff's neck area. The evidence is undisputed, however, that Dr. Zarek was unable to remove all of the fragments because those fragments were embedded near the cervical spine and could not be seen or felt by him. There is no evidence that such treatment was in any way medically deficient or unreasonable. Plaintiff states that, prior to surgery, Dr. Zarek predicted all of the fragments could be removed, a fact Dr. Zarek disputes. Assuming Dr. Zarek did make a statement to that effect, however, such prediction is not inconsistent with his ultimate inability to do so. In any event, even if a reasonable doctor exercising due care would have removed all of the fragments during surgery, Dr. Zarek's failure to do so, in the absence of any evidence that he acted recklessly or deliberately, would, at most, constitute negligence. Negligence does not establish a violation of the Eighth Amendment. See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004) (finding summary judgment in favor of defendant doctor proper where defendant doctor's failure to conduct differential diagnosis amounted to no more than negligence). Plaintiff submits no evidence, nor does any such evidence appear in the records submitted by respondent, suggesting Dr. Zarek's failure to remove all of the bullet fragments during surgery was either deliberate or reckless. Consequently, there is no genuine issue of material fact as to whether Dr. Zarek was deliberately indifferent to plaintiff's medical needs,

in violation of the Eighth Amendment, when he performed surgery on plaintiff.

2.  Pain Medication

Plaintiff next complains that his receipt of pain medication after surgery was delayed for nearly seven months, until November 2002. There is no evidence that this delay was caused by or is attributable to any of the defendants, however. Liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of the federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). According to plaintiff, he complained to Dr. Zarek that he was in pain, both after surgery and again at his May 1, 2002 follow-up appointment. Plaintiff states that Dr. Zarek ordered pain medication for him, but that he never received it. Plaintiff asserts that Dr. Zarek "failed to make certain plaintiff received the medication by making certain his staff did their job in getting that medication to plaintiff." (See Opp. at 3.) There is no evidence, however, that Dr. Zarek was required to take such additional steps. See Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (finding defendant doctor entitled to summary judgment where plaintiff claimed he did not receive antibiotics prescribed for him by defendant doctor, but failed to produce any evidence showing such failure was in any way within defendant doctor's control). Contrary to plaintiff's characterization of prison personnel as "his staff," there is no evidence in the record indicating Dr. Zarek had any authority or control over personnel responsible for delivering prescribed pain medication to the inmates. In the absence of evidence that Dr. Zarek had any control over the distribution of plaintiff's medications to plaintiff, Dr. Zarek cannot be held responsible for the delay in plaintiff's receiving the medication Dr. Zarek had ordered.[5] Moreover, even if plaintiff had shown the staff was under Dr. Zarek's supervision, Dr. Zarek's failure to check on their performance, in the absence of any showing he was aware of any failure to provide prescribed medications, would at most constitute negligence, and not deliberate indifference.

---

[5] Plaintiff eventually received pain medication after he was seen again in November 2002. Plaintiff does not assert, and there is no evidence indicating, that he made any further complaint of pain to Dr. Zarek or any other SVSP official before he requested the November 2002 appointment.

7

1   The other defendants, Lauber and Drs. Lee and Bowman, cannot be held responsible
2   for the delay in plaintiff's receiving pain medication between the date of his surgery and
3   November 2002; they did not become involved in plaintiff's care until early 2004. Plaintiff's
4   medical records indicate that, as of the November 20, 2002 visit, he has been examined
5   regularly and prescribed a variety of pain medications. In his opposition, plaintiff argues that
6   defendants also must submit evidence showing plaintiff actually "signed for" this prescribed
7   medication. Plaintiff's argument is not persuasive. Plaintiff does not assert, nor is there any
8   evidence indicating, that he failed to receive any of the pain medication prescribed for him as
9   of November 2002.

10   Consequently, there is no genuine issue of material fact with respect to whether any of
11   the defendants was deliberately indifferent to plaintiff's need for pain medication.

12       3.   Cervical Collar and Special Pillow

13   Plaintiff also complains about the delays in his receipt of a cervical collar and special
14   pillow for sleeping. Plaintiff's medical records indicate Dr. Zarek ordered the cervical collar
15   on December 18, 2003, and that the special pillow was ordered by a different doctor on June
16   6, 2004. There is no dispute that plaintiff did not receive these items until after July 28,
17   2004, the date the Director's level decision was issued requiring the items be provided to
18   plaintiff.[6] Plaintiff attributes such delay to Drs. Lee and Bowman because, in Dr. Bowman's
19   March 3, 2004 decision on plaintiff's first level appeal, and thereafter in the April 30, 2004
20   decision jointly rendered by Drs. Lee and Bowman on plaintiff's second level appeal, the
21   "chronos" necessary for plaintiff to possess the cervical collar and the special pillow were not
22   issued.

23   The pillow, however, had not been ordered until June 2004, long after Drs. Lee and
24   Bowman already had decided plaintiff's administrative appeals. Thus, there is no evidence
25   that these defendants' decisions in any way caused the delay in plaintiff's receiving the

---

[6]The parties agree that plaintiff received the collar and pillow at some point after this decision, but do not state, nor do the submitted records reflect, the exact date on which such receipt occurred.

8

pillow after it had been ordered.

Conceivably, Drs. Lee and Bowman could have accelerated plaintiff's receipt of a cervical collar had they ordered, in their rulings on the administrative appeals, that the requisite chronos be issued. In light of the substantial medical attention plaintiff did receive, however, the delay in plaintiff's receiving a cervical collar does not suggest, let alone demonstrate, deliberate indifference to plaintiff's medical needs. See, e.g., Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (finding no constitutional violation by reason of defendants' repeated failure to satisfy requests for aspirin and antacids to alleviate headaches, nausea and pain; noting isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain). In November 2002, after plaintiff complained of pain and requested medical attention, he was examined repeatedly by doctors, regularly prescribed a wide variety of medication for his pain, x-rayed twice, given an MRI, and evaluated by an outside neurosurgical consultant. The cervical collar was prescribed primarily for comfort; there is no evidence it had any therapeutic value with respect to plaintiff's condition. Even for comfort, the fact the neurosurgeon's report makes no reference to any need for a cervical collar suggests that the collar was not important. Given the overall amount of medical attention plaintiff received, the majority directed exclusively to managing his pain, the failure to provide him this additional item for a limited period of time does not establish deliberate indifference to serious medical needs.

With respect to Lauber, plaintiff relies on Lauber's failure to provide an interpreter to complete an interview with plaintiff for his first level administrative appeal. There is no evidence that the completion of this interview would have resulted in the earlier issuance of a chrono for either the cervical collar or pillow. Even if the lack of interview, in some manner, had delayed plaintiff's receipt of the collar, for the reasons discussed above with respect to Drs. Lee and Bowman, no genuine issue of material fact exists as to whether the subject

1  delay rises to the level of an Eighth Amendment violation.

2        4.      Second surgery

3       Plaintiff also complains about Dr. Zarek's failure to perform or recommend a second
4  surgery to remove the remaining fragments.  "A difference of opinion between a prisoner-
5  patient and prison medical authorities regarding treatment does not give rise to a § 1983
6  claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); see also Toguchi, 391 F.3d
7  at 1058, 1059-60 (holding difference of opinion among medical professionals as to need to
8  pursue one course of treatment over another insufficient, as matter of law, to establish
9  deliberate indifference).  There is no evidence in the record to support a finding that a second
10 surgery is medically necessary.  None of the numerous doctors who have examined plaintiff,
11 including the independent specialist in neurosurgery, have recommended such surgery.
12 Indeed, that neurosurgeon opined that nothing more could be done for plaintiff other than to
13 give him pain medication and a special pillow for sleeping.  Plaintiff's own opinion that he
14 needs a second surgery does not suffice to raise a genuine issue of material fact as to whether
15 the failure to provide a second surgery constitutes deliberate indifference to his medical
16 needs.

17      Although plaintiff contends a radiology report by David Staunton, M.D., dated
18 July 21, 2003, indicates a need for more surgery, that report merely confirms that some bullet
19 fragments remain, that a larger fragment had been removed, and that plaintiff has no cervical
20 spine injury.  The report does not mention, let alone recommend, surgery.  Plaintiff also
21 argues the report establishes that Dr. Zarek is a "liar," because the report only mentions one
22 large bullet fragment as having been removed, whereas Dr. Zarek's report states that three
23 bullet fragments were removed, specifically, one large fragment and two smaller fragments.
24 Plaintiff mischaracterizes the content of Dr. Staunton's July 2003 radiology report.  The
25 language in question is a comparison of Dr. Staunton's current radiological findings with the
26 findings made in his preoperative report, and simply notes the current absence of the large
27 fragment that was observed before plaintiff's surgery as well as the fact that some small
28 fragments are still present.  The report does not purport to count those fragments, let alone to

1 compare the number of small fragments seen before the surgery with the number seen after.
2 Indeed, neither Dr. Staunton's pre-operative report nor his post-operative report describes the
3 smaller fragments as other than "tiny" and "multiple."
4 In any event, as noted, neither that report or any other medical evidence suggests plaintiff
5 requires a second surgery.

6 In sum, plaintiff has failed to raise a genuine issue of material fact either as to whether
7 he needs a second surgery, or as to whether Dr. Zarek's refusal to perform such surgery
8 violated his Eighth Amendment rights.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are GRANTED.  Plaintiff's motion to amend his cross-motion for summary judgment is GRANTED and plaintiff's cross-motion for summary judgment is DENIED.

This order terminates Docket Nos. 30, 41, 50 and 51.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: March 16, 2006

_____
MAXINE M. CHESNEY
United States District Judge